**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **RICHARD L. WELLS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) **Case No.    CIV-10-1154-F** |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## FINDINGS & RECOMMENDATION
## OF MAGISTRATE JUDGE

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits (DIB) under 42 U.S.C. §§416(i) and 423, and his application for supplemental security income benefits (SSI) under 42 U.S.C. §1382c(a)(3). This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). The Commissioner has answered and filed the administrative record (hereinafter TR. ___). The parties have briefed their positions and the matter is now at issue. For the reasons stated herein, it is recommended that the Commissioner's decision be **AFFIRMED.**

### PROCEDURAL HISTORY

Plaintiff protectively filed his applications for DIB and SSI on January 7, 2004 alleging a disability since December 24, 2002 (TR. 29, 15). The applications were denied on initial consideration and on reconsideration at the administrative level (TR. 29). Pursuant to Plaintiff's request, a hearing *de novo* was held before an ALJ on September 7, 2005 (TR. 346-379). The ALJ issued her decision on December 27, 2005 finding that Plaintiff was not entitled to DIB or SSI (TR. 194-197). The Appeals Council granted the Plaintiff's request for review and on April 4, 2006, issued its order vacating the decision of the ALJ and remanding the case back to the ALJ (TR.

198-201). A supplemental hearing was held before the ALJ on February 28, 2007 (TR. 380-419). The ALJ issued her second decision on June 19, 2007 finding that Plaintiff was not entitled to DIB or SSI (TR. 29-38). The Appeals Council again granted the Plaintiff's request for review and on January 14, 2008, issued its order remanding the case back to the ALJ (TR. 290-292). A second supplemental hearing was held on September 17, 2008 (TR. 420-460). The ALJ issued her third decision on January 27, 2009 finding that Plaintiff was not entitled to DIB or SSI (TR. 15-25). The Appeals Council denied the Plaintiff's request for review on August 26, 2010, and thus, the decision of the ALJ became the final decision of the Commissioner (TR. 8-10).

## STANDARD OF REVIEW

The Tenth Circuit case of *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800-801 (10th Cir. 1991), sets forth the standard of review for social security disability cases:

> We must affirm the decision of the Secretary if it is supported by substantial evidence. (*citations omitted*). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (*citations omitted*). In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency. (*citations omitted*). We examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met. (*citations omitted*). If, however, the correct legal test in weighing the evidence has not been applied, these limitations do not apply, and such failure constitutes grounds for reversal. (*citations omitted*).

Further, the Tenth Circuit has stated that "[a] finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (*citations omitted).*

## THE ADMINISTRATIVE DECISION

In addressing the Plaintiff's disability applications, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity from her alleged onset date of December 24, 2002

through July 1, 2007, when the Plaintiff returned to work, so the process continued (TR. 17). At step two, the ALJ concluded that Plaintiff had the severe impairments of Brown-Sequard syndrome and affective disorder (TR. 17). At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments which met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 18). At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work (PRW) (TR. 23).

At the point that step five is reached, a disability preventing prior work activity has been shown and the burden shifts to the Commissioner to show that the claimant retains the ability to perform an alternative work activity which exists in the national economy. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). The ALJ found that Plaintiff retained the RFC to perform sedentary work, subject to certain limitations (TR. 20). The ALJ used Medical Vocational Rules 201.24 and 201.18 as a framework for decision making and considered the testimony of the VE in determining that the jobs of "surveillance systems monitor" and "merchandise marker" were jobs existing in significant numbers in the national economy which could be performed by Plaintiff (TR. 24). Thus, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to DIB or SSI (TR. 24).

## ISSUES PRESENTED

On appeal to this Court, Plaintiff alleges that the ALJ erred by failing to properly evaluate the medical evidence; and that the ALJ erred in her credibility analysis.

## MEDICAL EVIDENCE

In March 2004, Plaintiff underwent a consultative physical examination performed by Derrick Freeman, D.O., who found that Plaintiff had spasticity in the flexion/extension of his right lower extremity; that he had a "little bit" of difficulty of manipulation of small objects with his right hand due to the amputation of the fifth digit of the right hand; and that he had decreased

sensation in his right lower extremity with weak plantar and dorsiflexion (TR. 124). Dr. Freeman also noted that Plaintiff had a cystic mass at about L3 or L4 which was tender to palpation; that he had decreased range of motion of his right shoulder and right arm; and that there was no muscle atrophy or edema (TR. 124). Dr. Freeman found that Plaintiff's gait was antalgic with the assistance of a cane (TR. 124). His impression of Plaintiff was that he had motor nerve damage of the right lower extremity with a history of back pain and a possible tear of the right rotator cuff (TR. 124).

In March 2004, Plaintiff underwent a consultative physical examination performed by Sherman Lawton, M.D. (neurologist), who found that Plaintiff had no ataxia when allowance was made for spasticity; that on sensory examination, touch, vibratory sense and proprioception were intact; and that there was a decrease in pin prick and temperature sensation on the left side of the body from about T8 down (TR. 132). Dr. Lawton found that all reflexes were overactive in the legs; and that Plaintiff walked in a spastic fashion, more on the right than on the left (Tr. 132). Dr. Lawton also found that Plaintiff could walk on a level surface without an assistive device, but could not run and could not walk quickly without falling (TR. 132). Dr. Lawton also stated that he found no difficulty with Plaintiff's use of his arms; and stated that Plaintiff's "trouble is not in the lumbar spine nor is it in the peripheral nerves" (TR. 132).

In August 2004, Plaintiff was examined by his treating physician, Douglas L. Young, M.D., who found that he had marked lumbar tenderness just to the right of the spine, between T12 and S1 which was "extremely tender to touch" and in "definite muscle spasm"; that his right leg was weak; and that could not dorsiflex his right foot (TR. 138). Dr. Young's assessment was of a "Low Back Injury with Result of Left Foot Drop and Spasticity of Both Legs" (TR. 138). Dr. Young prescribed pain medication and stated that "Right now, I don't think exercises are going to help him very much. I think he is also depressed. We'll have to work with him on his depression" (TR. 138).

In November 2004, Plaintiff underwent a consultative psychiatric evaluation completed by Theresa S. Garton, M.D. (psychiatry), who found that his mood was moderately depressed; that his affect was congruent; that he was alert and oriented; and that he was of average intelligence (TR. 141). Dr. Garton further found that Plaintiff's thought processes were logical and goal-oriented; and that he was cooperative and polite (TR. 141). Dr. Garton's assessment was that Plaintiff had major depression with a current GAF of 40 (TR. 141). She concluded that Plaintiff would be able to manage any funds awarded to him (TR. 142).

In June 2004, a physical RFC assessment was completed by agency physicians in which they concluded that Plaintiff was able to occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds; stand and/or walk (with normal breaks) for about two hours in an eight-hour workday; and sit (with normal breaks) for about two hours in an eight-hour workday (TR. 162). Agency physicians further concluded that Plaintiff could only occasionally climb, balance, stoop, kneel, crouch, or crawl (TR. 163). Agency physicians also concluded that Plaintiff had no other exertional, postural, manipulative, visual, communicative, or environmental limitations (TR. 164-166).

In December 2004, agency physician, Hannah B. Swallow, Ph.D., completed a mental RFC assessment in which she concluded that Plaintiff was "moderately" limited in his ability to understand, remember and carry out detailed instructions; and was "moderately" limited in his ability to interact appropriately with the public (TR. 158-159). Dr. Swallow explained her conclusions by stating that Plaintiff was able to understand and carry out simple, routine, and some detailed instructions; and that Plaintiff will not be able to interact appropriately with the general public, but is able to interact with coworkers and supervisors for work purposes (TR. 160).

In October 2006, Plaintiff underwent a consultative physical examination performed by John A. Saidi, M.D. (family practice), who found that Plaintiff was able to walk without an assistive device, but that the speed of his gait was very slow (TR. 243). Dr. Saidi found that Plaintiff's gait

was safe and stable for a short distance, but was unsafe for longer distances (TR. 244). Dr. Saidi also found that Plaintiff had decreased range of motion in his spine, hips, right knee, right ankle, and shoulders (TR. 244). Dr. Saidi's final impression was that Plaintiff had a history of degenerative disk disease and degenerative arthritis as well as a herniated disk in his lumbar spine; and that he had mild chronic obstructive pulmonary disease (TR. 244). In a contemporaneous Medical Source Statement of Ability to Do Work-Related Activities (Physical) (MSS-P), Dr. Saidi concluded that Plaintiff was able to occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds; stand and/or walk (with normal breaks) for less than two hours in an eight-hour workday; and sit (with normal breaks) for less than two hours in an eight-hour workday (TR. 249-250). Dr. Saidi further concluded that Plaintiff could only occasionally climb, balance, stoop, kneel, crouch, or crawl (TR. 250). Dr. Saidi also concluded that Plaintiff was able to do only occasional reaching, handling, fingering and feeling; that he was limited in his ability to see and hear; and that he had environmental limitations caused by his impairments (TR. 251-252).

In February 2007, Plaintiff's treating physician, Dr. Young, completed an MSS-P in which he concluded that Plaintiff was able to occasionally lift and/or carry less than 10 pounds; stand and/or walk (with normal breaks) for no more than one hour total in an eight-hour workday; sit (with normal breaks) for less than one hour in an eight-hour workday; and could sit continuously for no more than 30 minutes (TR. 254). Dr. Young further concluded that Plaintiff would be required to lie down during the normal workday to manage pain or other symptoms; and that he could never climb, balance, stoop, kneel, crouch, or crawl (TR. 255).

Also in February 2007, Dr. Young completed a Medical Source Statement-Mental (MSS-M) in which he found that Plaintiff was "Markedly" limited in the following areas: His ability to understand, remember, and carry out detailed instructions; His ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; His ability

to sustain an ordinary routine without special supervision; His ability to complete a normal work day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; His ability to be aware of normal hazards and take appropriate precautions; and his ability to travel in unfamiliar places or use public transportation (TR. 256-257).

At the September 2008 supplemental hearing, a medical expert (ME), Phillip Lee McCown, M.D., testified that Plaintiff could perform light work; that Plaintiff should avoid unprotected heights, ladders, ropes or scaffolds; and that there was no need for Plaintiff to lie down during the workday (TR. 445-446).

## ANALYSIS

### I.      The ALJ's Evaluation of the Medical Evidence.

Plaintiff argues that the ALJ failed to properly analyze the opinions of her treating physician, Dr. Young, as stated in his medical source statements (See Plaintiff's Brief at pages 4-12).

When presented with opinions of a treating physician, the ALJ must "give good reasons" in his decision for the weight assigned to the opinion. 20 C.F.R. § 404.1527(d)(2) *see also* SSR 96-2p; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). The decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for "controlling weight." An ALJ should keep in mind that "it is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." SSR 96-2p; 20 C.F.R. §404.1527(d)(2).

The Tenth Circuit described the required analysis of a treating physician's opinion in

*Watkins v. Barnhart*, 350 F. 3d 1297, 1300-1301, (10th Cir. 2003):

> The analysis is sequential. An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, 1996 WL 374188, at *2 (quotations omitted). If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Id.* The agency ruling contemplates that the ALJ will make a finding as to whether a treating source opinion is entitled to controlling weight.

The Court in *Watkins* further reasoned that

> Resolving the controlling weight issue does not end our review. In completing the analysis: adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927,

*Watkins* at 1300; SSR 96-2p.

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight then in order to disregard or give "slight weight" to that treating physician's opinion, he must set forth "specific, legitimate reasons" for doing so. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).   In *Goatcher v. United States Dep't of Health & Human Services*, 52 F.3d 288 (10th Cir. 1995), the Tenth Circuit outlined factors which the ALJ must consider in determining the appropriate weight to give a medical opinion.

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which

an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 290; 20 C.F.R. § 404.1527(d)(2)-(6).

In her combined decisions the ALJ provided a detailed and thorough review of the medical evidence (TR. 34-36, 18). She also provided specific legitimate reasons for disregarding the opinions of Plaintiff's treating physician, Dr. Young (TR. 22, 36). In evaluating the opinions of Dr. Young the ALJ correctly observed that Dr. Young's medical source statements were "not supported by his contemporaneous treatment notes from August 2004 to August 2006" and that

> Although he indicated that the claimant was capable of sitting for less than 1 hour in an 8-hour day, this is unsupported by both the claimant's physician's treatment noted and other negative findings upon physical examination. The claimant's physician also indicated that the claimant was limited in his ability to push and pull: could never climb, balance, or stoop, kneel, crouch, or crawl: and could reach, handle finger, and feel only occasionally. Again, the record establishes only one complete physical examination conducted by the claimant's physician. Positive findings made upon this physical examination were limited to the back and lower extremities. Absolutely no positive findings were made with regard to the upper extremities. Consequently, the claimant's physician's limitations on such activities as pushing and pulling are unsupported by the documentary record. The treatment notes of the claimant's physician do not support the functional assessment entered

(TR. 22, 36). The ALJ also correctly observed that there is a "notable lack of significant medical treatment in the medical evidence of record"; and that Plaintiff received no medical treatment for two years after his alleged date of onset of disability (TR. 22). With respect to Plaintiff's depression, the ALJ observed that Plaintiff has no record of counseling or outpatient therapy for mental health issues, and no history of hospitalizations for the same; and that Plaintiff has been prescribed antidepressants by Dr. Young since December 2004 (TR. 18).

Accordingly, the ALJ properly concluded that the opinions of Dr. Young are not entitled to controlling weight; and that his opinions expressed in his medical source statements be given no weight and should be disregarded because they were not well supported by his own treatment

notes or by the medical evidence as a whole (TR. 22, 36). The ALJ's decision provides specific, legitimate reasons for his rejection of Dr. Young's opinions. *Watkins* at 1301.

Plaintiff argues the ALJ failed to adequately discuss why she discounted the opinions of the consultative examiner, Dr. Saidi (See Plaintiff's Brief at pages 12-13). On the contrary, the ALJ discusses the findings of Dr. Saidi and states that

> There is no record of any problems with the hands during the consultative examination and no records from the claimant's physician's treatment records. There are no records regarding complaints of any treatment for breathing problems. The undersigned finds the assessment of the consultative examiner to be of limited probative value given the absence of any contemporaneous and similar assessment by a treating source

(TR. 35). Thus, Dr. Saidi's findings were appropriately discounted.

Plaintiff also argues the ALJ improperly disregarded the opinion of the consultative psychiatric examiner, Dr. Garton, that Plaintiff 's "psychological limitations would impair his ability to work even if he did not have his orthopedic problems" (TR. 142) (See Plaintiff's Brief at pages 13-14). In addressing this opinion of Dr. Garton, the ALJ correctly observed that Dr. Garton's opinion "did not specify the nature of these limitations. Consequently, given the vague nature of the assessment, the undersigned finds the assessment of the consultative examiner to be of limited probative value " (TR. 34-35). Thus, Dr. Garton's opinion was properly rejected by the ALJ.

Thus, it appears that the ALJ did not err in her analysis of the medical evidence.

**II.    The ALJ's Credibility Analysis.**

Plaintiff also argues on appeal that the ALJ erred in her assessment of Plaintiff's credibility (See Plaintiff's Brief at pages 15-16). The legal standards for evaluating pain and credibility are outlined in 20 C.F.R. §§ 404.1529(c), 416.929 and SSR 96-7p, and were addressed by the Tenth Circuit Court of Appeals in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). First, the asserted pain-producing impairment must be supported by objective medical evidence. *Id.* At 163. Second, assuming all the allegations of pain as true, a claimant must establish a nexus between the

impairment and the alleged pain.   "The impairment or abnormality must be one which `could reasonably be expected to produce' the alleged pain."   *Id.*   Third, the decision maker, considering all of the medical data presented and any objective or subjective indications of the pain, must assess the claimant's credibility.

> [I]f an impairment is reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence.

*Id.* at 164.   In assessing the credibility of a claimant's complaints of pain, the following factors may be considered.

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1488 (10th Cir. 1991).   *See also Luna*, 834 F.2d at 165 ("The Secretary has also noted several factors for consideration including the claimant's daily activities, and the dosage, effectiveness, and side effects of medication.").

In *Kepler v. Chater*, 68 F.3d 387, (10th Cir. 1995), the Tenth Circuit determined that an ALJ must discuss a Plaintiff's complaints of pain, in accordance with *Luna*, and provide the reasoning which supports the decision as opposed to mere conclusions.   *Id.* at 390-91.

> Though the ALJ listed some of these [Luna] factors, he did not explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible.

*Id.* at 391. *Kepler* does not require a formalistic factor-by-factor recitation of the evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied.   *Id* at 1372.

In the present case the ALJ reached step three of the *Luna* analysis and in assessing the

credibility of the Plaintiff followed the dictates of *Kepler* by providing an adequate discussion of the evidence which linked specific evidence to her findings (TR. 20-22).

In accordance with *Luna* and *Kepler,* the ALJ determined that the medical evidence did not support the degree of limitation claimed by Plaintiff. The absence of an objective medical basis for the degree of severity of pain may affect the weight given to subjective allegations of pain. *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993); *See Luna*, at 165 (10th Cir. 1987).

An ALJ's determination of credibility is given great deference by the reviewing court. *See Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495 (10th Cir. 1992). On appeal, the court's role is to verify whether substantial evidence in the record supports the ALJ's decision, and not to substitute the court's judgment for that of the ALJ. *Kepler* at 391; (Credibility determinations are peculiarly within the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Thus, it appears from the record that the ALJ's credibility determination was supported by substantial evidence, complied with the requirements of the District Court's remand order, and should not be disturbed on appeal. (TR. 290-292).

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is supported by substantial evidence and should be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **January 3, 2012**. The parties are further

advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 13th day of December 2011.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE